## Commonwealth, Appellant, v. Broadwater.

Argued April 22, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*Frank P. Lawley, Jr.,* Assistant Deputy Attorney General, with him *Fred L. Brothers,* District Attorney, *Randolph C. Ryder* and *Robert J. Trace,* Deputy Attorneys General, *Joseph J. Baer* and *Robert E. Woodside,* Attorney General, for appellant.

*Anthony Cavalcante,* for appellees.

OPINION BY GUNTHER, J., July 17, 1952:

Elwood Broadwater, John Vanamin, Weldin Nicholson and Benjamin King[1] were charged with violating

---

[1] Benjamin King was not on trial in this case.

§313 of the Pure Stream Law.[2] At the end of the Commonwealth's case in chief the court below sustained defendants' demurrer on the ground that the prosecution had failed to sufficiently identify defendants. The Commonwealth has taken this appeal.

The indictment charged appellees with having operated a coal mine without having first secured the approval of the Sanitary Water Board of plans for the disposal of acid mine drainage as required by §313 of the Pure Stream Law.

"In passing on a demurrer to the Commonwealth's evidence in a criminal case, a court does not decide whether or not it would find a defendant guilty on such evidence but whether or not the evidence if credited by the jury is sufficient to warrant it in com-

---

[2] Act of June 22, 1937, P. L. 1987, article III, §313, as amended by §7 of the Act of May 8, 1945, P. L. 435, 35 PS §691.313. Section 313 provides: "Approval of Plans of Drainage.—Before any existing or new coal mine may be opened or reopened, and before any existing coal mine may be continued in operation, a plan of the proposed drainage and disposal of industrial wastes, and acid mine drainage of such mine, shall be submitted to the Sanitary Water Board, and it shall be unlawful to open or reopen any such mine, or to continue the operation of any mine, or to change or alter any already approved plan of drainage and disposal of industrial wastes, and acid mine drainage from such mine, unless and until the board, after consultation with the Department of Mines has approved such plan or change of plan: Provided, however, That this section shall not apply to the continuation of the operation of an existing mine until sixty (60) days after the effective date of this act.

"Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not less than one hundred dollars nor more than one thousand dollars, and the person, or if such person be an association or copartnership, then the members thereof, or if such person be a corporation, then the officers, agents, servants and employes thereof, may be imprisoned in the county jail for a period of not more than one year."

ing to a conclusion beyond a reasonable doubt that the defendant is guilty as charged." *Commonwealth v. De Petro,* 350 Pa. 567, 573, 39 A. 2d 838. The sole witness for the prosecution bearing on the question of identity was the prosecutor, a state police officer, who testified from notes made by him that a man who identified himself as Vanamin stated to the prosecutor "that him along with Broadwater, Benjamin King and Weldin Nicholson had leased the property from Myers Layman and that they were digging the coal and operating the mine and paying Mr. Layman . . . a royalty for each ton of coal taken from the mine." The prosecutor testified that Broadwater was present when this alleged conversation took place, but could not say whether Broadwater had heard the statement made by Vanamin. As to Broadwater, this is the only evidence implicating him. Assuming *arguendo* that Broadwater had heard the alleged statement of Vanamin, such is clearly insufficient to support a verdict of guilty as to him. In *Commonwealth v. Manuszak,* 155 Pa. Superior Ct. 309, 38 A. 2d 355, it was said that "Evidence of defendant's assenting silence in the face of an accusation of guilt, even when admissible, is corroborative only and must be accompanied by other evidence of guilt; it will not, standing alone, support a verdict of guilty". There is direct evidence by the prosecutor that Weldin Nicholson was not present when the statement of Vanamin was made, so that the Commonwealth's case against Nicholson is even weaker.

On cross-examination by the prosecutor as to the identity of Vanamin, he testified as follows: "Q. Well, but the defendants are here in court and I am asking you to point out and pick out the person that you spoke to without regard to name. A. The appearances are different at the present time, Mr. Cavalcante. The conversation took just a matter of seconds up at the

mine and as far as the personal appearance of the man, I didn't study him too close. After he is cleaned up it is difficult for me to recognize him right offhand. . . . Well, but is the gentleman that you spoke to here, sitting in court as one of the defendants? A. I presume he is, yes. Q. Well, is he or is he not? Who is he? A. I can't exactly point him out to you." The Commonwealth tacitly admitted the weakness of its case concerning identity of the defendants for in argument on the demurrer this colloquy appears in the record: "BY THE COURT: He [the prosecutor] hasn't pointed out these defendants as ones he talked to. BY MR. BAER: [Assistant Deputy Attorney General] Well, of course, they were dressed differently. He can't tell whether or not they are, I expect."

In *Commonwealth v. Bird,* 152 Pa. Superior Ct. 648, at 651, 33 A. 2d 531, it was said: "No class of testimony is more uncertain and less to be relied upon than that as to identity and like any other essential element in a criminal case, must be proven beyond a reasonable doubt." As in the *Bird* case, the prosecutor here was unable to identify defendants at the trial. In summary, the Commonwealth's evidence viewed in its most favorable light utterly fails to place Nicholson at or near the scene of the alleged crime; fails to introduce any other evidence of the guilt of Broadwater, and fails to identify Vanamin as the person the prosecutor talked to at the scene of the crime.

A recitation of the foregoing evidence clearly demonstrates that the court below did not err in sustaining the demurrer, for the evidence of the Commonwealth was so weak and inconclusive that as a matter of law not even a probability of fact can be drawn therefrom.

Judgments affirmed.