J-A03043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER COOLEY, | |
| Appellant | No. 3474 EDA 2016 |

Appeal from the Judgment of Sentence September 9, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0006347-2014

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED MARCH 28, 2018**

Appellant, Christopher Cooley, appeals from the judgment of sentence imposed following his jury conviction of attempted murder, aggravated assault, robbery, kidnapping, possession of an instrument of a crime, and two counts of criminal conspiracy.[1] We affirm.

This case arises from the brutal robbery of Kevin Slaughter by Appellant and his four co-defendants, Timothy Gooden, Kylieff Brown, Shaheed Smith, and Kareem Cooley, after a chance meeting between Slaughter and Brown at the SugarHouse Casino. We take the following facts and procedural history

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a), 3701(a)(1)(ii), 2901(a)(1), 907(a), and 903, respectively.

from the trial court's March 10, 2017 opinion and our independent review of the certified record.

On December 8, 2013, at approximately 8:00 p.m., Slaughter ran into Brown, whom he knew from prison, at the casino. Brown told Slaughter that he wanted to purchase cocaine and a handgun, and Slaughter responded that he was able to sell both. Slaughter cashed out with $3,600.00 to $4,200.00, and left the casino alone to drop off the money at his home in Northeast Philadelphia.

Slaughter then returned to the casino to meet Brown and they drove to South Philadelphia and picked up the drugs and gun. While they were driving, Brown was on the phone, telling the person he was speaking with their exact location. When Slaughter pulled over to stop at a store, a van drove by and then quickly returned, veering out of its lane towards his vehicle. Slaughter then looked in his rear-view mirror and saw Timothy Gooden slumped down on the right side of his vehicle, creeping towards him with a gun. Slaughter attempted to flee in the car, but Gooden fired bullets at it. The car crashed into a telephone poll, and Slaughter exited it and started running.

Slaughter was shot in his lower back and two or three men threw him into the van and tied him up with duct tape. The van fled the scene. Police quickly responded to a 911 call of gunshots and arrested Brown and Kareem Cooley, who had remained at the scene.

As the van traveled in the direction of center city, Gooden and Appellant rode in the back with Slaughter.[2] Gooden repeatedly asked Slaughter where his money and drugs were, and threatened to kill and burn him. Appellant pistol-whipped Slaughter numerous times, and put a gun in his face. Gooden punched Slaughter in the face several times and knocked out his front tooth. The men put a bag over his head at various points. Slaughter gave Gooden his address and the cell phone number of his wife, Samirah Savage, and told him to obtain the money he won at the casino from her. The men drove to his home.

Samirah Savage received several phone calls from a blocked phone number, which she did not answer. She then received a call from an unblocked number, (215) 789-0863, which she did not answer, and heard a knock on the front door. She went to the door, and a man with a cell phone told her that her husband was on the phone. She cracked the door open, took the phone, and spoke with Slaughter. He told her that he was being followed, that the person at the door was his friend, and to give the friend the money from the casino. When she questioned Slaughter, he told her to do what he said, or they would kill him. She gave the money and the phone to the man.

---

[2] Appellant wore a mask over his face during the episode and Slaughter did not identify him at trial; the Commonwealth established his identity through circumstantial evidence. (**See** N.T. Trial, 5/18/16, at 84; Trial Court Opinion, 3/10/17, at 5, 31). Slaughter identified Gooden as the man in the back of the van who did most of the talking during the incident at trial. (**See** N.T. Trial, 5/18/16, at 83-84).

Once the conspirators had Slaughter's money, they drove behind a high school and threw him out of the van. Gooden or Appellant shot at him six times, with a bullet passing through his face and neck. A resident of the neighborhood heard gunshots, found Slaughter, and called 911. The conspirators drove the van to another location, doused it with an accelerant, and lit it on fire as a neighbor watched. Meanwhile, police responded to the scene where Slaughter was shot and he was airlifted to the hospital. He underwent multiple surgeries and survived his injuries.

During the ensuing investigation, police obtained search warrants for the defendants' cellphone records, which showed frequent contact between them immediately before, during, and after the crime. The records showed that, during the relevant time-period, Appellant's cell phone had ten calls or text messages with Smith; sixty-two with Gooden; and thirty-five with Kareem Cooley. The Federal Bureau of Investigation (FBI) was able to reconstruct the conspirators' approximate locations throughout the crime using historical cell site data.[3] Appellant's cellphone was at the approximate site of each stage of the crime.

_____

[3] Special Agent William B. Shute of the FBI testified that historical cell site analysis is when investigators take the information contained in a suspect's call detail records, which are generated as a result of the suspect's phone calls, and analyze the calls and depict them onto a map. (**See** N.T. Trial, 6/01/16, at 40).

Arrest warrants were issued for those defendants not immediately apprehended at the scene of the first shooting. Appellant and Gooden were arrested on February 25, 2014. At the time of his arrest, Appellant had a cell phone in his possession with phone number (215) 789-0863.[4]

On June 13, 2016, a jury found Appellant guilty of the above-listed offenses. On September 9, 2016, the trial court sentenced him to an aggregate term of not less than twenty nor more than forty years' incarceration, followed by ten years of probation. On October 25, 2016, the court denied Appellant's timely post-sentence motion without a hearing. This timely appeal followed.[5]

Appellant raises the following issues for our review:

1) [Whether] the verdict is against the weight of the evidence such that certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice[?] Specifically, the Appellant contends:

> (a) That there was a compelling lack, and even contradictory evidence of, any physical identification of Appellant Cooley as a suspect in this criminal case;

> (b) That there was a compelling lack of evidence that Appellant Cooley was in actual possession of the cell phone in question on the date of the incident;

---

[4] Co-defendant Smith was arrested on June 5, 2014.

[5] Appellant, through counsel, filed a filed an untimely concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). However, because the trial court addressed the issues raised by Appellant in its March 10, 2017 opinion, we decline to find waiver, and it is unnecessary to remand. **See** Pa.R.A.P. 1925(a); **see also Commonwealth v. Brown**, 145 A.3d 184, 186 (Pa. Super. 2016), *appeal denied*, 165 A.3d 892 (Pa. 2017).

(c) That there was a lack of circumstantial physical evidence including, but not limited to, fingerprints and DNA evidence which would serve to link Appellant Cooley to this crime;

(d) That there was a lack of evidence that Appellant Cooley had any prior contact with his co-defendants;

(e) That there was direct and conflicting identification evidence that an individual other than Cooley was involved in the crime.

2) [Whether] there was [] sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt including, but not limited to, the identification of the Appellant Cooley as participating in this crime[?]

3) [Whether] the court committed error when it permitted the prosecution to introduce an exhibit [Det. [Robert Daly's] spread sheet] which unfairly prejudiced Appellant Cooley by adding information [[Appellant's] name] which was not contained on the official cell phone records[?]

4) [Whether] the court committed error when it permitted hearsay evidence in the form of cell phone contact entry(s) allegedly made by Kareem Cooley without an applicable hearsay exception or calling Kareem Cooley[?][6]

(Appellant's Brief, at 7) (unnecessary capitalization omitted).

Appellant first challenges the weight of the evidence[7] supporting his conviction, arguing that the Commonwealth failed to prove that he was physically present during the commission of the crime. (***See id.*** at 10-11, 18-

---

[6] Co-defendant Kareem Cooley entered a negotiated guilty plea for his involvement in this case in February 2015. (***See*** Trial Ct. Op., at 3 n.2, 34 n.19). He did not testify at trial. (***See*** N.T. Trial, 5/24/16, at 5).

[7] Appellant preserved his weight claim by raising it in his post-sentence motion. ***See*** Pa.R.Crim.P. 607(A)(3).

19).[8]  He asserts that, at most, the Commonwealth established only that someone (other than him) used a cell phone associated with him during the incident.  (*See id.*).  This issue does not merit relief.

> At the outset, we note that the weight attributed to the evidence is a matter exclusively for the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  The grant of a new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses.  Rather, the role of the trial judge is to determine that, notwithstanding all of the facts, certain facts are so clearly of greater weight, that to ignore them or to give them equal weight with all of the facts is to deny justice.
>
> An appellate court's purview:
>
> > is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience.  Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.
>
> An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.  [T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

***Commonwealth v. Hicks***, 151 A.3d 216, 223–24 (Pa. Super. 2016), *appeal denied*, 168 A.3d 1287 (Pa. 2017) (citations and quotation marks omitted).

---

[8] In the argument section of his brief, Appellant improperly conflates his weight and sufficiency claims (***see*** Appellant's Brief, at 10, 17-19), which are distinct challenges, in violation of our appellate rules.  ***See*** Pa.R.A.P. 2119(a) (requiring argument to be divided into as many parts as there are questions to be argued); ***see also Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

In the instant case, after considering all of the testimony and evidence presented at trial, the court determined that Appellant's weight claim is meritless. (*See* Trial Ct. Op., at 31). It explained:

[Appellant] was in possession of a phone at the time of his arrest in [February] 2014. (*See* N.T. Trial, 5/23/16, at 24-26, 255-56). Detective Daly testified that the phone was turned over to him and a search warrant was executed. (*See id.* at 252, 256). The search warrant revealed that the number for the phone was (215) 789-0863. (*See id.*). Records obtained pursuant to the warrant revealed that the 0863 number was registered to "Blood Money" with an address of 923 South 60th Street in Philadelphia. (*Id.* at 253). This address was the exact address [Appellant's] mother provided when she visited [him] in prison. (*See* N.T. Trial, 6/01/16, at 25-26). [Appellant] has "Blood Money" tattooed across his chest. (N.T. Trial, 5/23/16, at 253). His date of birth matched the birthdate associated with the account. (*See id.* at 255).

The phones associated with co-defendants Kareem Cooley and Timothy Gooden had the 0863 number saved in their respective cell phone address books as "Bop." (*Id.* at 179, 185, 269). [Appellant] has "Bop" tattooed on his forearm. (*Id.* at 253). [Appellant's] mother provided phone number (215) 471-0620 when she visited [him] in prison. (*See* N.T. Trial, 6/01/16, at 25-26). The 0620 number was saved in Gooden's phone as "Bop Mom." . . . (N.T. Trial, 5/23/16, at 270). [R]ecords for Gooden's phone showed [Appellant] was the most contacted person in the phone from September 1, 2013, to December 15, 2013. (*See* N.T. Trial, 5/24/16, at 165-66).

The complainant's wife testified that she received the ransom call from the 0863 number. (*See* N.T. Trial, 5/20/16, at 15-16). Records for the 0863 number showed that nine calls were placed to the complainant's wife between 11:09 p.m. and 11:12 p.m. on December 8, 2013, the night of the abduction. (*See* N.T. Trial, 5/24/16, at 149-151). Furthermore, cell phone records showed that numerous calls were exchanged between the 0863 number and co-defendants Kylieff Brown, Timothy Gooden, and Shaheed Smith from the time that Brown encountered the complainant at the SugarHouse casino until and after the time that

the complainant was removed from the van and shot at approximately 11:30 p.m. (***See id.*** at 168, 176, 178-184). Cell site analysis showed that each of these calls and text messages were made in close proximity to the respective crime scenes. (***See*** N.T. Trial, 6/01/16, at 56, 62, 64-65, 69, 71, 75-78). The number of calls and text messages, the content of those text messages, the timing of each of those communications, and the locations where those connections were made and received, and the fact that [Appellant] was in possession of the phone at the time of his arrest in [February] 2014, is strong circumstantial evidence that [Appellant] was one of the major players in this scheme. . . .

(***Id.*** at 30-31) (record citations provided).

Upon review, we agree, and conclude that the trial court did not abuse its discretion in finding that jury's verdict does not in any way shock the conscience. ***See Hicks***, ***supra*** at 223-24. Therefore, Appellant's first issue does not merit relief.

In his second issue, Appellant challenges the sufficiency of the evidence supporting his conviction. (***See*** Appellant's Brief, at 10-19). This issue is waived.

In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

***Commonwealth v. Freeman***, 128 A.3d 1231, 1248 (Pa. Super. 2015) (citations and quotation marks omitted) (finding sufficiency claim waived and declining to address issue where Rule 1925(b) statement failed to identify relevant elements or crimes).

Here, in his Rule 1925(b) statement, Appellant generically argued that: "There was not sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt including, but not limited to, the identification of the [A]ppellant as participating in this crime." (Rule 1925(b) Statement, 1/23/17, at 2 ¶ 2). Appellant's concise statement does not specify which element or elements of the relevant crimes, or even which crimes, the Commonwealth failed to prove beyond a reasonable doubt.[9] This vague assertion, which essentially reiterates his weight claim, is inadequate to preserve his sufficiency claim for appellate review. **See Freeman**, **supra** at 1248. Therefore, Appellant has waived his second issue.[10]

Appellant next argues that the trial court erred in permitting the Commonwealth to enter into evidence a spreadsheet prepared by Detective

_____

[9] We recognize that, in every criminal prosecution, the Commonwealth must prove beyond a reasonable doubt that the defendant was the perpetrator of the offense, and that identity is an implicit element of each crime. **See Commonwealth v. Hickman**, 309 A.2d 564, 566 (Pa. 1973); **Commonwealth v. Broadwater**, 90 A.2d 284, 285 (Pa. Super. 1952). Here, the Commonwealth presented substantial evidence of Appellant's involvement in the incident, and viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, as we must under the relevant standard of review, there was sufficient evidence to establish Appellant's identity beyond a reasonable doubt. **See Commonwealth v. Duck**, 171 A.3d 830, 835 (Pa. Super. 2017).

[10] Appellant has also waived this issue by failing to develop it adequately in his brief. (**See** Appellant's Brief, at 10-19); **see also** Pa.R.A.P. 2101, 2119(a)-(b). Although the jury convicted him of numerous crimes, he does not set forth the elements of the crime(s) he is challenging, or otherwise identify the specific elements he disputes. (**See id.**). Additionally, as noted, he conflates his sufficiency and weight claims.

Daly summarizing raw data from cell phone call detail records. (*See* Appellant's Brief, at 19-20). Appellant contends that this was prejudicial because the detective added the names of the individuals associated with each phone number to the chart, which gave the unfair impression that the listed individual made the call. (*See id.* at 19). This was especially problematic in light of Appellant's defense that someone else used the cell phone associated with him to make the calls. (*See id.*). This issue is waived.

As the Commonwealth points out, Appellant's three-paragraph argument on this issue is underdeveloped, and does not contain a single case citation to support his assertion that admission of the spreadsheet was prejudicial. (*See id.* at 19-20; Commonwealth's Brief, at 14). It includes no discussion of legal authority, save a bare passing reference to Pennsylvania Rule of Evidence 403. Appellant therefore waived his third issue. *See* Pa.R.A.P. 2119 (a)-(b); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014) ("The Pennsylvania Rules of Appellate Procedure require that each question an appellant raises be supported by discussion and analysis of pertinent authority, and failure to do so constitutes waiver of the claim.") (citation omitted).

Moreover, it would not merit relief.

> Our standard of review concerning the admissibility of
> evidence is well settled:
>
> > With regard to the admission of evidence, we
> > give the trial court broad discretion, and we will only

- 11 -

> reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. . . .
>
> Relevance is the threshold for admissibility of evidence. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401.
>
> "The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice. . . . " Pa.R.E. 403.
>
> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (some citations and quotation marks omitted).

"Visual aids [such as charts] may be used to assist the jury in understanding the evidence in appropriate cases, and permission to do so is within the sound discretion of the trial judge." *Commonwealth v. Rickabaugh*, 706 A.2d 826, 837 (Pa. Super. 1997), *appeal denied*, 736 A.2d 603 (Pa. 1999) (citation omitted). "A chart or diagram may be used at trial where it assists the jury in clarifying facts." *Commonwealth v. Johnson*, 615 A.2d 1322, 1334 (Pa. Super. 1992) (citation omitted). "If the trial court could properly conclude that the exhibit would be helpful to the jury, the decision to admit the exhibit will likely be upheld on appeal." *Id.* (citation omitted).

Here, the trial court admitted the spreadsheet prepared by Detective Daly, based on its finding that it would help the jury break down and understand the voluminous call detail records in this case. (***See*** N.T. Trial, 5/23/16, at 9-10). It issued a cautionary instruction underscoring that the detective created the spreadsheet for trial, stating:

> [The spreadsheet] is demonstrative evidence in the sense that these aren't the exact, actual call records that you are going to be seeing. This detective took all of that raw information that you just heard about for an hour and took what he believed was needed, summarized it and put it in a format which will make it easily understandable to you.
>
> You are still the judge of the facts. He created this. So if there is something on there that you disagree with, based on the evidence that you heard, then it is your accounting of it, your recollection.

(N.T. Trial, 5/24/16, at 116-17). It its opinion, the court explained:

> [Appellant] and his co-defendants were connected to each other and to the locations of the three crime scenes through circumstantial evidence in the form of cell phone messages and cell cite analysis. The call detail records for each defendant were voluminous and complex. Consequently, Detective Daly created spreadsheets highlighting the relevant calls and text messages in each of the defendants' call detail records in order to assist the jury on understanding the relevant data. The defense was in possession of all of the raw data and it was admitted into evidence. The court gave a cautionary instruction to the jury that the document was created by the detective himself. During deliberations, the jury asked for both the raw data and Detective Daly's spreadsheets. It is clear that the spreadsheet was not so prejudicial such that it inflamed the jury to render its verdict based upon something other than the legal propositions relevant to the instant case. . . .

(Trial Ct. Op., at 33-34) (record citation omitted).

Based on the foregoing, we conclude that the trial court properly determined that the spreadsheet could "assist the jury in understanding the evidence[.]" *Rickabaugh*, *supra* at 837 (citation omitted). Additionally, the court issued an appropriate cautionary instruction, which the jury is presumed to have followed. *See Talbert*, *supra* at 542 ("Jurors are presumed to follow the trial court's instructions.") (citation omitted). Therefore, we discern no abuse of discretion in the trial court's admission of the spreadsheet. *See id.* at 539. Appellant's third issue would not merit relief, even if it were not waived.

Finally, Appellant claims that the trial court erred in admitting hearsay evidence, in the form of a cell phone address-book contact entry of his alleged nickname, "Bop," in Kareem Cooley's cell phone, without an applicable exception. (*See* Appellant's Brief, at 20-21). This issue is also waived.

Specifically, we agree with the Commonwealth's assessment that Appellant's two-paragraph argument on this issue is undeveloped, in that it contains no citation to or discussion of applicable legal authority, save a bald reference to Pennsylvania Rule of Evidence 801(a). (*See id.*; *see also* Commonwealth's Brief, at 17-18). Therefore, Appellant has waived this claim. *See* Pa.R.A.P. 2119 (a)-(b); *Buterbaugh*, *supra* at 1262.

Moreover, it would not merit relief.[11]  "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." ***Commonwealth v. Kuder***, 62 A.3d 1038, 1055 (Pa. Super. 2013), *appeal denied*, 114 A.3d 416 (Pa. 2015) (citation omitted); ***see also*** Pa.R.E. 801(c). A statement can be oral or written.  ***See*** Pa.R.E. 801(a).

"As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence." ***Kuder***, ***supra*** at 1055 (citation omitted).  However, "[w]hen an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule."  ***Id.*** (citation omitted).

Here, the trial court determined that the cell phone contact entry at issue was not hearsay.  (***See*** Trial Ct. Op., at 35).  Upon review, we agree. The entry was introduced, not for the truth of the matter asserted (*i.e.*, that the listed phone number belonged to Appellant), but to show the relationships among the parties involved in the crime.  Therefore, the trial court did not abuse its discretion in admitting evidence of the entry.  ***See Talbert***, ***supra*** at 539; ***Kuder***, ***supra*** at 1055.  Appellant's final issue would merit no relief, even if it were not waived.  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[11] As previously noted, our standard of review relative to the admission of evidence is for an abuse of discretion.  ***See Talbert***, ***supra*** at 539.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/18