J-A03044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TIMOTHY T. GOODEN, | |
| Appellant | No. 3506 EDA 2016 |

Appeal from the Judgment of Sentence September 9, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0003686-2014

BEFORE:  GANTMAN, P.J., McLAUGHLIN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 18, 2018**

Appellant, Timothy T. Gooden, appeals from the judgment of sentence imposed following his jury conviction of attempted murder, aggravated assault, robbery, kidnapping, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia without a license, possession of an instrument of a crime, and four counts of criminal conspiracy.[1]  We affirm.

This case arises from the brutal robbery of Kevin Slaughter by Appellant and his four co-defendants, Christopher Cooley, Kylieff Brown, Shaheed Smith, and Kareem Cooley, after a chance meeting between Slaughter and Brown at the SugarHouse Casino.  We take the following facts and procedural

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901, 2702, 3701, 2901, 6106, 6108, 907, and 903, respectively.

history from the trial court's March 10, 2017 opinion and our independent review of the certified record.

On December 8, 2013, at approximately 8:00 p.m., Slaughter ran into Brown, whom he knew from prison, at the casino. Brown told Slaughter that he wanted to purchase cocaine and a handgun, and Slaughter responded that he was able to sell both. Slaughter cashed out with $3,600.00 to $4,200.00, and left the casino alone to drop off the money at his home in Northeast Philadelphia.

Slaughter then returned to the casino to meet Brown and they drove to South Philadelphia and picked up the drugs and gun. While they were driving, Brown was on the phone, telling the person he was speaking with their exact location. When Slaughter pulled over to stop at a store, a van drove by and then quickly returned, veering out of its lane towards his vehicle. Slaughter then looked in his rear-view mirror and saw Appellant slumped down on the right side of his vehicle, creeping towards him with a gun. Slaughter attempted to flee in the car, but Appellant fired bullets at it. The car crashed into a telephone poll, and Slaughter exited it and started running.

Slaughter was shot in his lower back and two or three men threw him into the van and tied him up with duct tape. The van fled the scene. Police quickly responded to a 911 call of gunshots and arrested Brown and Kareem Cooley, who had remained at the scene.

As the van traveled in the direction of center city, Appellant and Christopher Cooley rode in the back with Slaughter. Appellant repeatedly

asked Slaughter where his money and drugs were, and threatened to kill and burn him. Cooley pistol-whipped Slaughter numerous times, and put a gun in his face. Appellant punched Slaughter in the face several times and knocked out his front tooth. The men put a bag over his head at various points. Slaughter gave Appellant his address and the cell phone number of his wife, Samirah Savage, and told him to obtain the money he won at the casino from her. The men drove to his home.

Samirah Savage received several phone calls from a blocked phone number, which she did not answer. She then received a call from an unblocked number, which she did not answer, and heard a knock on the front door. She went to the door, and a man with a cellphone told her that her husband was on the phone. She cracked the door open, took the phone, and spoke with Slaughter. He told her that he was being followed, that the person at the door was his friend, and to give the friend the money from the casino. When she questioned Slaughter, he told her to do what he said, or they would kill him. She gave the money and the phone to the man.

Once the conspirators had Slaughter's money, they drove behind a high school and threw him out of the van. Appellant or Cooley shot at him six times, with a bullet passing through his face and neck. A resident of the neighborhood heard gunshots, found Slaughter, and called 911. The conspirators drove the van to another location, doused it with an accelerant, and lit it on fire as a neighbor watched. Meanwhile, police responded to the

scene where Slaughter was shot, and he was airlifted to the hospital. He underwent multiple surgeries and survived his injuries.

During the ensuing investigation, police obtained search warrants for the defendants' cellphone records, which showed frequent contact between them immediately before, during, and after the crime. The Federal Bureau of Investigation (FBI) was able to reconstruct the conspirators' approximate locations throughout the crime using historical cell site data.[2] Appellant's cellphone was at the approximate site of each stage of the crime.

Arrest warrants were issued for those defendants not immediately apprehended at the scene of the first shooting. Appellant was arrested on February 25, 2014.

On June 13, 2016, a jury found Appellant guilty of the above-listed offenses. On September 9, 2016, the trial court sentenced him to an aggregate term of not less than twenty nor more than forty years' incarceration, followed by ten years of probation. On October 25, 2016, the

_____

[2] Special Agent William B. Shute of the FBI testified that historical cell site analysis is when investigators take the information contained in a suspect's call detail records, which are generated as a result of the suspect's phone calls, and analyze the calls and depict them onto a map. (*See* N.T. Trial, 6/01/16, at 40). The phone number of the phone attributable to Appellant was (267) 670-6898. (*See id.* at 63).

court denied Appellant's timely post-sentence motion without a hearing. This timely appeal followed.[3]

Appellant raises the following questions for our review:

1. Whether the trial court erred in admitting into evidence the identifying information of the names of individuals saved in cellular phone address books on two occasions[?]

2. Whether the trial court erred in admitting into evidence hearsay as to the identity of Christine Moore as the owner of a specific cell phone number and her relationship with Appellant[?]

3. Should Appellant be awarded an arrest of judgment on all charges as there is insufficient evidence to sustain the verdict[?]

4. In the alternative, should Appellant be awarded a new trial as the greater weight of the evidence does not support the verdict[?]

(Appellant's Brief, at 4) (commentary omitted).

At the outset, we note that Appellant's first two issues challenge the trial court's admission of certain evidence. (**See id.**). Our standard of review relative to the admission of evidence is for an abuse of discretion. **See Commonwealth v. Kuder**, 62 A.3d 1038, 1053 (Pa. Super. 2013), *appeal denied*, 114 A.3d 416 (Pa. 2015).

Appellant first argues that the trial court erred in admitting hearsay evidence, in the form of cellphone address-book contact entries of his alleged nickname "Shooter" or "Da Shoota," in the cellphones of Kareem Cooley and Christopher Cooley. (**See** Appellant's Brief, at 8-10; **see also** N.T. Trial,

---

[3] Appellant filed a timely, court-ordered concise statement of errors complained of on appeal on December 4, 2016. The trial court entered an opinion on March 10, 2017. **See** Pa.R.A.P. 1925.

5/23/16, at 185-86, 258, 262-63 (Kareem and Christopher Cooley's contact entries listing the phone number of "Shooter/Da Shoota" as (267) 670-6898)). This issue is waived.

It is well-settled:

> Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal.  Rule 1925 is thus a crucial component of the appellate process.  When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.  When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.  In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.  While [**Commonwealth v.**] **Lord**[,] [719 A.2d 306 (Pa. 1998) ] and its progeny have generally involved situations where an appellant completely fails to mention an issue in his Concise Statement, . . . **Lord** . . . also appl[ies] to Concise Statements which are so vague as to prevent the court from identifying the issue to be raised on appeal.

**Commonwealth v. Ray**, 134 A.3d 1109, 1114 (Pa. Super. 2016) (one citation omitted).

Here, the issue Appellant listed in his Rule 1925(b) statement regarding the cellphone contact entries failed to identify for the trial court the hearsay issue he sought to pursue on appeal.  (**See** Rule 1925(b) Statement, 12/04/16, at unnumbered pages 1-2 ¶ 3).  The trial court found that: "[Appellant] fails to state with specificity how the court erred."  (Trial Court

Opinion, 3/10/17, at 39).[4] The court assumed that Appellant challenged its admission of the cellphone contact entries on the basis of improper authentication. It proceeded to analyze the authentication issue in the body of its opinion, relegating its rejection of any potential hearsay claim to a brief footnote. (*See id.* at 39-42). Therefore, because the trial court had to guess what issue Appellant was appealing, he failed to preserve his claim properly. *See Ray*, *supra* at 1114. Accordingly, Appellant's first issue is waived.[5]

_____

[4] Appellant's Rule 1925(b) statement provides: "The [c]ourt erred in admitting into evidence the identifying information of the names of individuals saved in cellular phone address books on two occasions. The first was the names and associated phone numbers found in the cellular phone found on and attributed to Kareem Cooley. (*See* N.T. Trial, 5/24/16, at 3). The second was the names and associated phone numbers found in the cellular phone found on and attributed to Christopher Cooley. (*See* N.T. Trial, 5/23/16, at 151)." (Rule 1925(b) Statement, at unnumbered pages 1-2 ¶ 3) (record citation formatting provided). The record reflects discussions among the attorneys and the trial court regarding several legal issues concerning the cellphone contact entries, including authentication, hearsay, and relevance. (*See* N.T. Trial, 5/23/16, at 151-54; N.T. Trial, 5/24/16, at 3-7, 12).

[5] Moreover, we agree with the Commonwealth's assessment that the cellphone contact entries were not hearsay. (*See* Commonwealth's Brief, at 12, 15). "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Kuder*, *supra* at 1055 (citation omitted); *see also* Pa.R.E. 801(c).

Here, the contact entries were not offered to prove the truth of the matter asserted, *i.e.*, that the listed phone number in the entries ((267) 670-6898) belonged to Appellant. (*See* Commonwealth's Brief, at 12 (explaining that evidence was offered to show relationships among parties involved in crime)); *see also Kuder*, *supra* at 1055 (extrajudicial statement is not hearsay where it is not offered to prove truth of its contents). In fact, Appellant himself gave (267) 670-6898 as his phone number to the police one month after the incident involving Slaughter, when he was the victim of a

Appellant next argues that the trial court erred in admitting hearsay evidence regarding his alleged relationship with a woman named Christine Moore, which he argues was used to connect him to phone number (267) 670-6898. (*See* Appellant's Brief, at 11-13). Appellant directs this Court to Detective Robert Daly's testimony describing Moore as his girlfriend. (*See id.* at 12). This claim is waived.

As the Commonwealth points out, Appellant's argument on this issue is underdeveloped, and does not contain a single case citation to support his assertion that the detective's testimony constituted impermissible hearsay. (*See id.* at 11-13; Commonwealth's Brief, at 20-21). It includes no discussion of legal authority, save a bare passing reference to Pennsylvania Rule of Evidence 802 and the Sixth Amendment to the United States Constitution. Appellant therefore waived his second issue. *See* Pa.R.A.P. 2119(a)-(b); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014) ("The Pennsylvania Rules of Appellate Procedure require that each question an appellant raises be supported by discussion and analysis of pertinent authority, and failure to do so constitutes waiver of the claim.") (citation omitted).

Moreover, it would not merit relief. As previously noted, "[h]earsay is an out-of-court statement offered to prove the truth of the matter asserted in

---

shooting. (*See* Trial Ct. Op., at 19, 39 n. 20; *see also* N.T. Trial, 5/20/16, at 142-44; N.T. Trial, 5/24/16, at 65-66, 69). Therefore, Appellant's first issue would not merit relief, even if it were not waived.

the statement." ***Kuder***, ***supra*** at 1055 (citation omitted). "[A] 'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). "As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence." ***Kuder***, ***supra*** at 1055 (citation omitted); ***see also*** Pa.R.E. 802.

Here, the following exchange took place between the Commonwealth and Detective Daly on redirect examination:

Q. Counsel [for Christopher Cooley] asked you who Christine Moore is.

A. That's correct.

Q. Who is Christine Moore?

[Counsel for Appellant:] Objection, hearsay. . . .

THE COURT: Overruled.

Q. Who is Christine Moore?

A. [Appellant's] girlfriend.

(N.T. Trial, 5/26/16, at 114).

Upon review, we conclude that the challenged testimony did not constitute hearsay because Detective Daly did not relay "an out-of-court statement" made by anyone. ***Kuder***, ***supra*** at 1055 (citation omitted). The detective merely stated his own conclusion regarding the status of Moore's relationship with Appellant, based on his investigation. Therefore, the trial

court did not abuse its discretion in allowing the testimony. **_See id._** at 1053. Appellant's second issue would merit no relief, even if it were not waived.

In his third issue, Appellant challenges the sufficiency of the evidence supporting his conviction. (**See** Appellant's Brief, at 13-15). This issue is also waived.

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

**_Commonwealth v. Freeman_**, 128 A.3d 1231, 1248 (Pa. Super. 2015) (citations and quotation marks omitted) (finding sufficiency claim waived and declining to address issue where Rule 1925(b) statement failed to identify relevant elements or crimes).

Here, the trial court found that Appellant waived his sufficiency claim by failing to set forth with particularity in his Rule 1925(b) statement the elements of each crime the Commonwealth allegedly did not prove beyond a reasonable doubt. (**See** Trial Ct. Op., at 29). We agree. Specifically, in his Rule 1925(b) statement, Appellant generically argued: "That [he] should be awarded an arrest of judgment on all charges as there is insufficient evidence to sustain the verdict. The Commonwealth did not prove that [he] was a principal, an accomplice or a conspirator to any of the events in question." (Rule 1925(b) Statement, at unnumbered page 1 ¶ 1). Appellant's concise

- 10 -

statement does not specify which element or elements of the relevant crimes the Commonwealth failed to establish beyond a reasonable doubt.[6] This vague assertion is inadequate to preserve his sufficiency claim for appellate review. *See Freeman*, *supra* at 1248. Therefore, Appellant has waived his third issue.[7]

In his final issue, Appellant challenges the weight of the evidence supporting his conviction, arguing that the jury's verdict shocks the conscience because Slaughter initially identified another man, Raheem Turner, in a photo spread as the man who shot him. (*See* Appellant's Brief, at 16-18).[8] This issue is also waived.

_____

[6] We recognize that, in every criminal prosecution, the Commonwealth must prove beyond a reasonable doubt that the defendant was the perpetrator of the offense, and that identity is an implicit element of each crime. *See Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973); *Commonwealth v. Broadwater*, 90 A.2d 284, 285 (Pa. Super. 1952). Here, the Commonwealth presented substantial evidence of Appellant's involvement in the incident, and viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, as we must under the relevant standard of review, there was sufficient evidence to establish Appellant's identity beyond a reasonable doubt. *See Commonwealth v. Duck*, 171 A.3d 830, 835 (Pa. Super. 2017).

[7] Appellant has also waived this issue by failing to develop it adequately in his brief. (*See* Appellant's Brief, at 13-15); *see also* Pa.R.A.P. 2101, 2119(a)-(b). Although the jury convicted him of numerous crimes, ranging from attempted murder to firearms violations, he does not set forth the elements of the crimes he is challenging, or otherwise identify the specific elements he disputes. (*See* Appellant's Brief, at 13-15).

[8] Appellant neglected to provide this Court with any citations to the record to support his claim. *See* Pa.R.A.P. 2119(c) (mandating that an appellant provide references to record). Our review reveals that Slaughter identified

Specifically, Appellant waived his weight claim premised on Slaughter's identification of Raheem Turner by failing to raise it in his post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3); *see also Commonwealth v. Petteway*, 847 A.2d 713, 717 (Pa. Super. 2004) (concluding appellant waived weight claim by failing to raise it with trial judge). In the motion, Appellant challenged the weight of the evidence only on the basis that the parties presented unspecified "conflicting statements and conflicting physical evidence[.]" (Post-Sentence Motion, 9/12/16, at unnumbered page 2 ¶ 4). Appellant did not refer to Slaughter's photo array identifications or to Raheem Turner at all.

Likewise, in his Rule 1925(b) statement, Appellant only vaguely argued that: "[he] must be awarded a new trial as the greater weight of the evidence does not support the verdict. The greater weight did not support any proposition finding [Appellant] guilty as a principal, an accomplice or a conspirator. The verdict was based on speculation, conjecture and surmise." (Rule 1925(b) Statement, at unnumbered page 1 ¶ 2). This statement did not identify Appellant's specific claim centered on Slaughter's initial identification of Raheem Turner; consequently, the trial court did not discuss this claim in its opinion. (*See* Trial Ct. Op., at 38-39) (addressing and finding

---

Appellant as the perpetrator from a photo array, and that he repeatedly identified Appellant as the principal offender of the episode during trial. (*See* N.T. Trial, 5/18/16, at 83-84, 88, 90, 96-97, 100, 112, 114, 120). Slaughter also testified that he initially mistakenly identified Raheem Turner as the shooter in a photo array, and that he informed law enforcement of this error. (*See id.* at 118-121, 206, 213-215, 218-22).

- 12 -

meritless only vague assertion raised in Rule 1925(b) statement). Therefore, Appellant's final issue is waived for this reason as well. *See* Pa.R.A.P. 1925(b)(vii); *see also Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (claims not raised in Rule 1925(b) statement are waived).[9] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/18

---

[9] Moreover, Appellant's weight claim would not merit relief. The jury heard Slaughter's numerous in-court identifications of Appellant as the perpetrator, and also heard testimony regarding his initial identification of Turner. (*See supra*, at *11-12 n.8). The jury, as fact-finder, was free to believe all, part, or none of the evidence, and to assess Slaughter's credibility. *See Commonwealth v. Hicks*, 151 A.3d 216, 223 (Pa. Super. 2016), *appeal denied*, 168 A.3d 1287 (Pa. 2017). After review of the record, we discern no abuse of discretion regarding the trial court's denial of Appellant's weight claim. *See id.* (noting this Court's extremely limited standard of review concerning weight claims, confined to whether trial court abused its discretion in finding jury's verdict did not shock its conscience).